With the passage of BAP CEPA, there were quite a few changes made to the Bankruptcy Code, but I think for this matter, there's only three sections that need to be looked at, those being the addition of Section 1115, the changes made to Section 1129B2BII, and the addition of Section 1129A15B. Following the effective date of BAP CEPA, for five years, the courts followed what has come to be known as the broad interpretation, that is, the absolute priority rule does not apply to individual Chapter 11 debtors. Then, in 2010, with a case in the Northern District, the Godebo case held that contrary to five years of history, now the absolute priority rule applied to pre-petition property, but not post-petition property. Now, the debtors would assume, or assert, I should say, that that holding was an error, and that the subsequent lineage of cases after it are also fundamentally flawed because of the theory that Section 1115 only added post-petition property, and Section 1115 did not include pre-petition property. Do you think the majority opinion in Friedman is correct? Yes. Despite the fact that there are four circuits now that have gone the other way. Yes, I'm aware of that, but I think that Friedman is the better analysis. Let me ask you this. We're certainly not bound by what the four other circuits have said, and we're not bound by what the BAP has said. It's not an Article III court. But how would we write an opinion that says, despite the careful analysis of the four other circuits, we disagree? What I would suggest. What approach should we take? I would start by looking at Section 1115. And 1115 creates three tranches of property. Very distinct. If you read. I have 1115 right in front of me. Sure. Looking at 1115 says that. Right. It says that the estate consists of the stuff in 541, the stuff, some post-petition property with. And post-petition earnings. And some post-petition property, which includes earnings, and excludes some things, which I want to ask you about later. But so what? Now, where do we go with that? Yeah. What I think. But the operative thing is the first sentence. What? That it includes. Well, it includes. In a case in which the debtor is an individual. Yeah. Property of the estate includes in addition to. Right. The property specified in 541. So when we get later on to figure out what the property included under Section 115 is, why isn't the most natural reading of that section, what it has included, is the additional property? In addition to the property in 541. Your interpretation requires us to say that Section 115 has included the property in 541, which is already there. And so that's. Tell me why that's not the natural reading. That's been the argument in the other circuits. Tell me why it's wrong. In doing that, you can tell us how we should, you know, take from that how we would craft an opinion that goes your way. That Section 1115 is a special case. It provides a revised definition of property of the estate in the case of a cram down under 1129B. So they start out saying in this case, the first tranche of property that's included in property of the estate under 1115 is the property in Section 541. Tell me what language in 115 supports this tranche argument. Because, remember, when we get back to 1129, it says included under Section 115. Right. So the question is, what's included under 115? And your position is that 541 property has been included under 115. Included as the first part. Okay. Tell me what language in 115 leads me to that conclusion. To me, in the first sentence, it says, you know, in addition to the property specified in Section 541, that's the starting point. Right. And so to me, I mean, I don't want to look. The language here is tricky. But I want you to tell me why I'm wrong, because I have to be wrong in order to rule your way. When a statute says in addition to the property under 541, the bankruptcy state includes, and a later one says we're talking about the property included under 115, I think the most natural reading of that language is to think that the included refers to the stuff after the word includes in 115. Why is that an incorrect interpretation? And Freedman, where they looked at that language as being additive. You know, they weren't saying that the 541 property that was there at the commencement of the estate was a separate island unto itself. Rather, I think they're saying, or, well, Freedman said, and I take that position, that we start out with the property, pre-petition property at commencement of the estate, add these other two possible tranches of property, and then come up with the totality of the property of the estate under Section 1115. Does that reading make Section 103A not applicable to individual Chapter 11s? No, I don't think so. I think that. Why not? 103A says the property of the estate is at the commencement of the petition. Right, right. But that was, you know, that was pre-Bapsepa, and Bapsepa added a lot of things that made Chapter 11 look like a Chapter 13. I agree, but my question's different. It was pre-Bapsepa. After Bapsepa, does 103A have any vitality under your interpretation? I think so. I mean, I've read those arguments that go both ways. Well, tell me why it does, because you're saying the whole estate is defined by 115. Well, I think in this case, in a cram-down, property of the estate is defined under Section 1115. I don't see where that invalidates 103 at all. I think that 1115 was added for the purposes of a cram-down in an individual debtor. Well, 1115 defines the property of the estate whether there's a cram-down or not, does it not? Yes. But where it's particularly used and comes into play in this case is under 1129. Let's go back to 1129. If 1129 meant the first sentence, the first clause of 1129 is the absolute priority rule. It really has three clauses. It says provided but except. Right. With respect to that first clause, why wouldn't, if we wanted to do away with the absolute priority rule in individual Chapter 11s, why doesn't the second clause simply say except with respect to individual debtors? That's the question people have asked ever since then. I don't know. Congress is not good at what it does. Right. But, you know, if you look at it. We assume that it is. Especially with this rule that's been longstanding. Right. Oh, yeah. But before 1978, the court, you know, the Congress eliminated it. And they brought it back. Yeah. But they brought it back. And so they knew how to do away with it when they wanted to. And at this point they don't expressly do away with it. You've got to. Right. But I think. An argument.  world. I mean, a good example of that is in 1129 itself, where it says included in this State under Section 1115, subsequent, subject to the requirements of subsection A14. Now, if you think about that, that doesn't make any sense. That's domestic obligations, support obligations. But don't we have to? I mean, yeah. And there's some evidence that it should have. It's because when they renumbered 14 and 15, they never fixed this. I don't think that it would have said 15 because. How would you get around the presumption against implied repeal? I don't think it's implied. I think. Why not? Because I think when you read the plain language of these statutes, it includes pre-petition property. Well, you can't argue that Congress did a bad job and tell us that we can read the plain language and arrive at a result. You have to admit it's not. Well, you're stuck with it. Yeah. You have to admit that the plain language doesn't automatically take us to a result here, does it? No, but I think when you really think about the plain language and parse through Section 1115, that you do have three tranches of property. And for this purpose, for the purpose of that section, it includes pre-petition and the two types of. I'm still having trouble with that argument, so help me with it. I don't doubt that we have three tranches of property. The question is, what is the property included in the estate under 115? And wasn't the property, wasn't the 541 property already in the estate before 115 was passed? Right, but if you take that standpoint, why do they even bother to put that sentence in? Because it was meant to say, I mean, this is the Friedman minority view. There's certainly a good reason to put that sentence in. What we're saying is that there's only a certain small class of property that we're exempting from the absolute priority rule, and that's your post-petition earnings that were included under 115. Right. But that, in essence, pretty much for an individual debtor, makes it impossible to confirm a plan. Does it make it impossible? Like in this case. Like in this case, or in the. . . Well, it makes it impossible to do a cram down. It doesn't make it impossible to confirm a plan. Right, well, it'll convert to a 7, right? Yeah. Right, and, you know, some of the other circuits have held, well, the debtor could just simply sweeten the pot or pay the creditors off in full, but that's not possible in most individual Chapter 11 cases, and it's certainly not possible in this case. The debt here, the amount here, is that $2 million? Right. It's a guaranteed claim. Well, what happened here? Because it seems like your client made a decision to sign off personally for this $1.9 million loan, correct? Right, he made a bad mistake with two partners. And so. . . There are no good mistakes. He sought Chapter 11 relief. Right, he had no choice. The creditor rejected the proposal, which the proposed plan of reorganization. And they objected. And I'm curious, because in the proposed plan for reorganization, your client offered to pay $5,000, and that's it, for this $1.9 million debt, while he maintained his practice, his engineering practice, and also a rental home, not his primary residence, in Lake Tahoe, worth $1.2 million. Right, which. . . And we've settled with the two secured creditors in the case, valuing the house much, much, much less than that. But isn't this exactly what Congress was after, was to prevent somebody in the position of your client from cramming down a plan on somebody like the bank here and retaining most of his assets? I mean, this is. . . I think, I think this is why post-petition assets were included in the state and why the cram-down provision was made more difficult. When you look at this, it sounds like exactly the kind of debtor abuse of Chapter 11 that Congress was out to solve. Well, before you answer that, if there's liquidation under 7, what does the secured creditor stand to get? The only creditor that would receive anything is the holder of the first trust deed. And under the plan, we've provided for the holder of the second trust deed to have an unsecured claim, and we bifurcated the claim of the first trust deed holder into a secured and unsecured claim. The second trust deed would be paid over a period of 15 years. The first trust deed would be paid, the secured part would be paid over 30 years. So this debtor is committing 30 years of his income in furtherance of the plan. And so the total recovery, when you figure out the interest that will be paid, the principal that will be paid, it's far, far above what you would get in this Chapter 7 litigation. Although you could have treated all unsecured creditors the same, could you not? Excuse me? You could have treated all unsecured creditors the same. Isn't the bank's problem here that it's being treated more poorly than somebody else who made an unsecured creditor? I'm sure that is their claim. Right. So you, I mean, had you treated all unsecured creditors the same, perhaps the plan could have been confirmed. There's hardly any unsecured creditors. There's only a few. It's nothing. They're basically convenience class creditors. So when you get right down to it, what we have is this unsecured claim based on a guarantee. The bank, the preceding California Bank and Trust, obviously made a bad loan. No, and I guess my question is, my question is really directed to your statement that you could never confirm a plan. I suspect you could confirm a plan that was more favorable to this unsecured creditor than it was because, as you point out, if you went to a seven, it would have gotten nothing. It would have gotten nothing. And there's been those conversations, but we're just miles apart. I think Judge Merguez had a question for you. Well, one of the comments that have been made is that BAPCA supports creditors, supports the creditors. I mean, the background behind BAPCA was to try to protect the creditors. Well, the bankruptcy court, you know, reorganization. I guess my question is why would Congress, if that's true, why would Congress have wanted to enact such a debtor-friendly provision if the whole overall aspect? Scheme was protection, correct. I don't really see this as being completely debtor-friendly. I think that there's provisions. The fact that they're going to commit 30 years of their disposable income, I mean, I don't see how that's friendly, so to speak. They're not going to get off like a Chapter 13 debtor would be with a five-year And then here, the outside limit of the payments is 30 years. That's because it's a Chapter 11? What's that? A Chapter 11. Yes. That's what's under the plan. So I think that these debtors are committing a great deal and that the net result under this plan will be a recovery that's much greater, you know, for creditors on a whole. Obviously, your point about the guarantee creditor being treated dissimilarly, they are. It's a different treatment. I mean, we came up with a plan that we thought would be affordable. And like I say, when we've had discussions regarding changing what we would offer them, we just didn't get anywhere. We moved, but they didn't. They basically have come back saying they want all their money. So is everything just on hold pending the outcome of these appeals? What's that? Is everything on hold? Yes. You mentioned the Lake Tahoe House. What's happened to the Lake Tahoe House? Is that on hold too? They're still renting it. You know, it's a seasonal rental. You know, this is falling into the season where they don't rent very much. You know, Tahoe is a summer place and like a Christmas place. And in between, there's not always a lot of business. And it certainly isn't part of the record in this case. But let me just be clear. If your client filed a Chapter 7, post-petition earnings would not be included. Right. All the assets at the time of filing. Only the assets at the time of filing under 103A. Right. Would be liquidated, right? But my client, I don't think, would have passed the means test. For a Chapter 7? Redemption? No, because of the income level. I've never done the means test analysis of Chapter 7. Oh, I see. But I suspect that they wouldn't pass. So, in that case, that was my question. Is Chapter 7 an alternative in this case or is it not? I think the only way that it would be an alternative is if the bankruptcy court converted it. You know, I mean, I don't think they could voluntarily. You couldn't voluntarily. I don't think we could voluntarily change to Chapter 7. I see. So, we would be forced into an involuntary 7 liquidation, which would have a bad result. I mean, the secured creditor with the first trustee wouldn't get anywhere near what he will get under what we presented in the plan. Most of the money would come from the sale of the house? What's that? Most of the money would come from the sale? Yeah, right. Of the property in Tahoe? Right. Okay. All right. We let you go over your time. So, let's hear from the other side. Thank you. I'll give you some time for rebuttal. Good morning to the panel, and may it please the Court, along with my partner, Penelope Parms, my name is Matt Murphy on behalf of California Bank and Trust. I'd like to direct my comments to first Judge Paez's question at the beginning of questions to counsel for the debtor and Judge Merguia's question regarding implied appeal. The Fourth Circuit in Maharaj found this statute, 1115 and 1129B2B2, to be ambiguous. Well, let's take them in pieces. 1115 is not ambiguous at all, is it? It is not, Your Honor. Okay. And I disagree with the Fourth Circuit that 1129B2B2 is ambiguous with respect to the term included in the estate under Section 1115. I believe that to be a conscious choice by Congress. Well, couldn't Congress have said added to the estate under 1115, as opposed to included in the estate under 1115, if it really meant what the Fourth Circuit said? I don't think so, Your Honor. Included here is parallel from 1129B2B2. Included calls to be within, right? Yes, Your Honor, but in this case, the easier way for Congress to have done that would have been to set, in addition, in place of, or merged with. They didn't say that. And the reason why they didn't say that is because 541 has always defined the property of an estate at the commencement of a bankruptcy. 1115 was added to identify post-petition property as part of the expansion of that definition. But in order to do that, they had to bring the absolute priority rule back into play, which is what the first section of 1129B2B2 codifies, and it accepts. Well, the first section of 1129B2B2, we have to come up with a shorter shorthand. The first section of the relevant section, first clause didn't change at all. It did not, Your Honor. So the absolute priority rule could have remained with no change whatsoever to the relevant section, correct? It could have, Your Honor. But you just could have left 1129 as it was, 1129B2B2, and we're redefining the property of the estate in 1115, and we still have an absolute priority rule. But they didn't do that. They did something more. They did, and they made it specific to individual debtors who file under Chapter 11 with that last clause. And the property that is included is property that the debtor may retain, and the debtor may retain property post-petition. Post-petition, in effect. Correct, Your Honor. What do you do with the last clause? Does that make any sense at all? Of 1115 or 1129? 1129. The last clause that says except, and it deals with domestic relations cases, everybody seems to agree it wasn't meant to deal with that at all. It was meant to deal with what is now 1115. Is that right? Your Honor, that's something for the legislature to fix, and as far as we're aware there's no pending legislation to fix it. So how would that apply? I don't think it applies here, Your Honor, because there's no spousal support that's in this particular case. That's right. So we're accepting from this spousal support. Is there any case in which there would be spousal support involved? Not that I'm aware of, Your Honor. So the last clause is completely redundant, superfluous, of no effect? Well, if the canons of construction allowed us to construe statutes that way, the answer to that would be yes. But since we have to construe it to give value to each term. Is there a real-world situation that it ever covers? Well, I can't imagine, Your Honor, that a business would have spousal support. Nor can I. So is it your view, so an individual debtor can keep his post-petition property, but he has to forfeit his pre-petition property? That's my position, Your Honor. And I guess one of the questions I have, wasn't that the case before and after MAVCA? Correct, Your Honor. If MAVCA kept the rule exactly the same for the individual debtors, why did it add Section 1115 and amend Section 1129B2B2? Your Honor, there's been statements made in the Lively case about why that was done. And in the case of conferring a benefit upon the debtor, the Fifth Circuit held that that language could be construed to show that post-petition property is now brought under the automatic stay. Sure, so that you couldn't get his post-petition property. Correct. Otherwise, you just would have proceeded in this case. Had he filed under the old code, you would have just proceeded under his post-petition property. Correct, Your Honor, I think that's correct. And now his post-petition property is protected against your lawsuit. And he can continue to earn to continue the business running in the status quo. Well, it's sort of strange to think that Congress meant to protect the debtor. Right, Your Honor. In a statute in which they're complaining about debtors all the time, isn't it? In the House report, and the courts have noted how poor the statutory history is on this particular point, but in House Report No. 109-31, the legislature did say the heart of the bill's bankruptcy reform consists of implementation of an income slash expense screening mechanism, also called means testing, which is intended to ensure that debtors repay creditors the maximum amount they can afford. So to the extent that that is in the record and that BAP CPA protects post-petition property, there's a tension there, but I don't see it as irreconcilable. Do we have a disconnect now between Chapter 13 and Chapter 11? Part of the argument for the broad interpretation of this statute is that Congress meant to bring Chapter 11 and Chapter 13 into rough conformity and that now we don't have conformity, that if you earn less than a certain amount, you get the benefit of Chapter 13 and you don't have to worry about 1129B2B. But under your interpretation, if you earn more and you go into a Chapter 11 individual, then you have a different situation. Why shouldn't we interpret this to be in conformity with Chapter 13's provisions? Your Honor, as the Tenth Circuit said in Icehouse, if that's what Congress intended to do with BAP CPA, it would have eliminated the debt ceiling for a Chapter 13. And just said that there's no debt ceiling at all for Chapter 13? For individuals. Yes, Your Honor. Another change created by BAPCA is that when an unsecured creditor objects to a debtor's plan of reauthorization, the debtor must then commit his disposable income over five years to pay the unsecured creditor. I guess, why would Congress enact that kind of measure, I guess in your view, the debtor, which is similar I think to what your view is, because the debtor would also have to forfeit his pre-petition property, wouldn't he? I mean, wouldn't it make sense to allow the debtor to keep his pre-petition property so as to maximize the disposable income he would commit to paying? Well, the debtor can, Your Honor, under certain situations, even in a cram-down, so long as the plan is not discriminatory and is fair and equitable among all unsecured creditors. Well, in any Chapter 11, my guess is the debtor is going to, even before this statute, the debtor was going to retain some pre-petition property, otherwise he would have gone into a seven. That's correct. And in any Chapter 11 after this, the debtor is going to retain some post-petition property. Yes. And the question is how much. He may voluntarily agree to commit some of it to the plan, but he doesn't have to? That's right, Your Honor. So if the absolute priority rule remains intact here, what happens in this particular case as we were discussing with counsel a minute ago? How does this case proceed from here? How does this unfold? Well, Your Honor, this case, the facts of this case, and I know that these have been discussions really in general terms, but the facts of this case are this debtor has an active and successful engineering practice and has a rental property in addition to the residence. Those are going to be income generators. They are income generators now and they're going to continue. But assume the plan is not approved. Yes. So what happens next? Do you sue them in Superior Court or something? If they were to dismiss, that would likely be the next step. You'd sue and get a judgment and then you have a judgment lien. Correct, Your Honor. And if the alternative, I mean, you could always arrive at a different plan that people agreed on, but assuming that doesn't happen, can the bankruptcy court convert this to a 7? Your opponent says he can't voluntarily file a 7 and I haven't checked. But can the bankruptcy court convert it to a 7? Well, I think the problem there, Your Honor, is It's a big problem for you because you get nothing. True, but again, because of the unique facts of this case, having a practice and rental property that are income generators, we don't see that as the likely outcome. No, I'm not asking, but can the bankruptcy court do it? Well Are they empowered to do it? Chapter 7 doesn't cover or it doesn't apply the means test to business debts and that's primarily what this bankruptcy is about, is business debts. But when it's done involuntarily, does that test apply? I don't believe so. Can the bankruptcy court do it just sui sponte on its own or do you have to We would have to file it. You have to file a motion to ask the bankruptcy court to convert it to a 7? Yes, Your Honor. And you're not inclined to do that? You wouldn't do that because you'd get nothing, but could one of the other creditors do that? Perhaps, but the record reflects our supplemental excerpts. The other unsecured creditors did not file proofs of claim. So in this particular case, I don't believe they could. They couldn't do it. So realistically, what happens here is you either agree on a plan or the petition gets dismissed. Correct, Your Honor. There was some discussion in one of the cases, it might have been Maharajah or Ice House, where the creditor can not just reject, but they can reject and object to the plan. Correct, Your Honor. Which I guess one of the courts commented was rather harsh. In this case, the debtor here has an engineering practice and then has this rental property. I guess there's other cases. One of them is a mom and pop business. I'm just trying to figure out, and if you could just help me here, it's also possible for the creditor to just reject and not object. Is that right? Yes, if it's an impaired creditor. An impaired creditor has the ability to simply reject the plan or vote to reject. And if an impaired creditor simply rejects, does the absolute priority rule come into play? Yes. So he doesn't have to both reject and object. Correct. If you're an unimpaired creditor, you have to do both, too. I would say, and I think it would be a difficult. An uphill battle, because if you're unimpaired, by the nature of things, what are you complaining about? Correct, Your Honor. So in closing, I will say this to the Court, that the Fourth Circuit in Maharaj found the statute to be ambiguous. The Fifth Circuit completely disagreed and found the statute in Icehouse to be straightforward. The Fifth Circuit criticized the parsing of the statute by some courts, and the Tenth Circuit's opinion in Stevens said both interpretations are plausible. But what all the circuits agreed on is that this case is won by the presumption against implied repeal. And there is nothing in the statute or the statutory history that demonstrates Congress had an intent to repeal the absolute priority rule in individual Chapter 11 cases. And with that, I will follow the advice of the Supreme Court and Edwards that silence is most eloquent. Thank you. Thank you, counsel. We appreciate your arguments. Let's see if we have two minutes for rebuttal. I think one of the things that needs to be ---- When you look at the means test and why that was inserted, the whole idea was to maximize the recovery by creditors. And that's also why A15B was inserted, to maximize the recovery. And this plan maximizes the recovery to the creditors, even though it may not be what the appellee wishes to have. But for the vast majority of the creditors, they are going to see a greater recovery under the plan as opposed to a liquidation. So I think that by looking at our view and the view in Friedman and not the view in these other circuit court decisions, we allow a debtor to have a plan, spend 30 years of his disposable income in furtherance of the plan, and will in the end provide a greater recovery to the creditor base as a whole. I don't think you should focus on just one creditor. Understood. You made a statement earlier that the debtors have committed, I think, 30 years of their disposable income payment of their secured creditors. I mean, does 1129A15 require them to commit at least five years of disposable? Or the longer of the period under which the plan provides for payments? So because we have a 30-year deal with the secured creditor for the first. But to their unsecured creditors, I mean, including California Bank and Trust, have they made a commitment to California Bank and Trust? No, California Bank and Trust wanted a one-time payment. There was a problem because of a stop-loss agreement from when they took over the debt, but that's long gone. So they have some flexibility. Okay, thank you, counsel. Thank you. We appreciate your arguments. And as I mentioned to the other counsel, we also appreciate your coming down here to Stanford to participate in the arguments. Thank you. And that will end our morning session. All rise.
judges: Paez, Murguia, Hurwitz